**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

JEFFREY ARNOLD JAMES,                          :

    Plaintiff,                          :

v.                          :          CA 14-00467-CG-C

WERNER ENTERPRISES, INC., *et al.*,          :

    Defendants.                          :

## REPORT AND RECOMMENDATION

    This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on the Plaintiff's Motion to Remand this matter to the Circuit Court of Washington County, Alabama, (doc. 14) and brief in support (doc. 14-1); the response filed by Defendants Dolgencorp, LLC, d/b/a Dollar General, ("Dollar General") and Sabrina Williams (doc. 18); and the Plaintiff's reply (doc. 19).  After careful consideration of the pleadings and the briefs of the parties, it is **RECOMMENDED** that the Plaintiff's motion be **GRANTED**, and that this matter be **REMANDED** to the Circuit Court of Washington County, Alabama.

## Background

    The Plaintiff filed his Complaint (doc. 1-2) in the Circuit Court of Washington County, Alabama, on September 10, 2014, asserting a personal injury action against the Defendants.  (*Id.*)  Specifically, the Plaintiff alleges that he was involved in an automobile accident when his vehicle collided with a truck driven by Defendant Ralph Vazquez, an employee of Defendant Werner Enterprises, Inc., ("Werner Enterprises") or

Dollar General.  (*Id.*, ¶¶ 3, 8.)[1]  Plaintiff alleges that Vazquez was delivering Dollar General merchandise to a Dollar General store in McIntosh, Alabama, ("the McIntosh store") and that the incident occurred while Vazquez was pulling his delivery truck onto the store lot.  (*Id.*, ¶¶ 38-39.)  The Plaintiff asserts negligence and wantonness claims against Vazquez, as an employee of Werner Enterprises or Dollar General, (*id.*, ¶¶ 7-13); negligent and wantonness claims against Werner Enterprises and Dollar General for the hiring, supervising and retaining of Vazquez, as well as their entrusting Vazquez to operate and control the delivery truck involved in the accident, (*id.*, ¶¶ 14-36); and negligence and wantonness claims against Dollar General and Sabrina Williams, a Dollar General employee and manager of the McIntosh store, for failing to secure a safe method of delivery of Dollar General merchandise, (*id.*, ¶¶ 37-41).  As a result of the automobile accident, the Plaintiff alleges that he sustained the following injuries:

> he was bruised and contused, he has been made sick, sore, lame and disabled; he suffered injuries to his cervical spine and neck. . . . [H]e has been caused to incur hospital, doctor, medical and drug bills in and about the treatment of his injuries; he has suffered great physical pain and mental anguish and will be caused to suffer great physical pain and mental anguish in the future.  He has been permanently injured.

(*Id.*, ¶ 9.)  The Plaintiff seeks "compensatory and punitive damages in excess of the jurisdictional limits of [the Circuit Court of Washington County, Alabama]."  (*Id.* at 6-7, 9-10, 13.)

Defendants, Dollar General and Sabrina Williams, filed their Notice of Removal in this Court on October 14, 2014, asserting that this Court has diversity jurisdiction

---

[1]    The Plaintiff alleges that Werner Enterprises "was the owner of the tractor truck being operated by [Vazquez]," (doc. 1-2, ¶ 2), and that Dollar General "was the owner of the box trailer that was being pulled by [Vazquez]," (*id.*, ¶ 4).

over this case pursuant to 28 U.S.C. § 1332.  (Doc. 1.)  The Defendants argue that diversity jurisdiction exists because the properly joined parties are diverse and the amount in controversy is in excess of $75,000.  (*Id.* at 2.)  Although the Plaintiff and Defendant Williams are both citizens of Alabama, (doc. 1-2, ¶ 1, 5), the Defendants contend that Ms. Williams was fraudulently joined in an effort to destroy diversity jurisdiction, (doc. 1 at 3-6).  With regard to the amount in controversy, the Defendants argue that recently reported jury verdicts for similar cases demonstrate that "the estimated amount at issue in this case will far exceed the jurisdictional amount."  (*Id.* at 11.)

In his brief in support of his motion to remand (doc. 14-1), the Plaintiff argues that he has stated a valid claim against Ms. Williams and, thus, the Defendants' fraudulent joinder claim is without merit.  (*Id.* at 5-8.)  With regard to the amount in controversy, the Plaintiff argues that the Defendants cannot rely on jury verdict and settlement reports to establish the value of this case.  (*Id.* at 8-11.)

**Discussion**

*The Removal Inquiry.*

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court."  *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  A federal court may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1).  Nevertheless, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . .  Indeed, all doubts about jurisdiction should be

resolved in favor of remand to state court." *University of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *cf. D.M.C. Enters. Inc. v. Best McAllister, LLC*, Civil Action No. 10-00153-CB-N, 2010 WL 3039477, at *2 (S.D. Ala. Aug. 4, 2010) ("Because it is conferred by statute, the right of removal is strictly construed to limit federal jurisdiction.") (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)).

Therefore, the defendant must establish the propriety of removal under section 1441 and, for that reason, "bears the burden of establishing the existence of federal jurisdiction[,]" *Brown v. Kabco Builders, Inc.*, Civil Action 07-0099-WS-C, 2007 WL 841690, at *1 (S.D. Ala. Mar. 15, 2007) (citing *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002)), which requires that the defendant, one, establish complete diversity— that the plaintiff is diverse from the defendants, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citation omitted)—and, two, show that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *see Fitzgerald v. Besam Automated Entrance Sys.*, 282 F. Supp. 2d 1309, 1314 (S.D. Ala. 2003).

*Amount in Controversy*

"If a plaintiff makes 'an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement.'" *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting *Tapscott*, 77 F.3d at 1357). In an effort to meet its burden the removing defendant may present additional evidence to establish that the amount in controversy exceeds $75,000. *Roe*, 613 F.3d at 1061 ("In some cases, [the removing defendant's] burden requires [it] to provide additional evidence demonstrating that removal is proper." (footnote and citation omitted)); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 756 (11th Cir. 2010) (concluding

that defendants can "submit [their] own evidence in order to satisfy the jurisdictional requirements of removal").

Additionally, because the Notice of Removal was filed within thirty days of receiving the Plaintiff's initial pleading in this matter, the Notice of Removal is brought pursuant to Section 1446(b)(1), (doc. 1 at 2), and the Eleventh Circuit's decision in *Roe* further guides the undersigned's analysis. *See Roe*, 613 F.3d at 1061 (distinguishing between Section 1446(b) first-paragraph cases and second-paragraph cases).[2]  In *Roe*, the Eleventh Circuit instructed:

> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable.  *See* [*Pretka*, 608 F.3d] at 754.  Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount."  *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009)); *see also Williams*, 269 F.3d at 1319 (11th Cir. 2001) (allowing district courts to consider whether it is

---

[2]    Congress, through § 1446(b), has established a "bifurcated removal approach," *Lee v. Lilly Trucking of Va., Inc.*, No. 2:12–cv–74–MEF, 2012 WL 960989, at *1 (M.D. Ala. Mar. 21, 2012), under which

> a state court defendant may remove a case to federal court at two procedurally distinct moments in time.  First, if it is facially apparent from the initial pleading that subject matter jurisdiction exists, § 1446(b)(1) provides the procedure for removal.  *See, e.g., Pretka*[, 608 F.3d at 754]; *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001).  Such a removal must be accomplished "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action is based . . . ."  § 1446(b)(1).  However, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ."  § 1446(b)(3); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007).

*Id.*

In 2011, Congress restructured section 1446(b).  Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112–63, December 7, 2011, 125 Stat. 758.  Consequently, "the 'first paragraph removals' discussed in prior case law are now embodied in subsection (1), [28 U.S.C.] § 1446(b)(1), and the 'second paragraph removals' are now encompassed in subsection (3), *id.* § 1446(b)(3)."  *Holley v. Madison Indus., Inc. of Ga.*, No. 4:12-CV-2243-VEH, 2012 WL 3771909, at *3 n.2 (N.D. Ala. Aug. 27, 2012).

"facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

*Id.* at 1061-62 (footnote omitted).

Here, damages are not specified in the Plaintiff's Complaint. (*See* doc. 1-2.) The Plaintiff merely demands "compensatory and punitive damages in excess of the jurisdictional limits of [the Circuit Court of Washington County, Alabama]." (*Id.* at 6-7, 9-10, 13.) The Circuit Court of Washington County has jurisdiction over civil matters where the amount in controversy exceeds $3,000.00. Ala. Code § 12-11-30(1). Thus, the Plaintiff's explicit request for damages in his Complaint clearly fails to establish that the amount in controversy exceeds $75,000, and the Defendants must prove by a preponderance of the evidence that the amount in controversy meets the jurisdictional threshold.[3]

In an effort to establish the amount in controversy, the Defendants rely on eight reported jury verdicts in Alabama state courts in the last five years. (Doc. 1 at 6-11; doc. 18 at 6-9.) The eight referenced cases involved vehicular accidents with trucks causing, among other things, neck injuries to the plaintiffs. (Doc. 1 at 8-10.) Juries returned verdicts in those cases in the following amounts: $700,000; $741,618;[4] $95,000; $76,586; $75,000; $870,000; $300,000; and $375,000. (*Id.*) However, the Defendants have not provided the Court with any facts about the severity of injuries in this case. (*See* docs. 1 and 18.) Without such facts, the undersigned cannot conclude that this case is so similar

---

[3]     The Plaintiff and the Defendants agree that a specified amount of damages is not included in the Complaint and, thus, that preponderance of the evidence is the applicable burden of proof. (*See* doc. 14-1 at 8-9; doc. 18 at 6-7.)

[4]     The $741,618 figure is the sum of four damage awards for the four plaintiffs involved in that case. (Doc. 1 at 9.) The individual awards were as follows: $225,870; $56,808; $95,370; and $363,570. (*Id.*)

to other cases involving jury verdicts in excess of $75,000 that the value of this case will exceed the jurisdictional amount also.[5]

As this Court has previously stated:

> Other verdicts are certainly inadequate to carry a removing defendant's burden when the defendant fails to provide details about the facts of the other cases, or when there is no "specific detail about the present action," or both. [*Lowery*, 483 F.3d at 1221.] In such a situation, there is insufficient information to allow a comparison between the other cases and the removed case, and thus a court cannot "possibly ascertain how similar the current action is to those the defendants cite." *Id.*; *see also Pretka*[, 608 F.3d at 753] (the *Lowery* defendants failed because they "failed to explain the facts of those other tort cases or link them to the facts of the *Lowery* case"); *cf. Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 809 (11th Cir. 2003) ("Mere citation to what has happened in the past does nothing to overcome the indeterminate and speculative nature of [the plaintiff's] assertion" that the amount in controversy exceeds $75,000).
>
> Assuming without deciding that *Lowery* leaves the door open for a removing defendant to rely on (or solely on) awards in other cases, the Court has been provided insufficient information to allow it to ascertain how similar this action is to those. Without that showing of similarity, the other cases cannot support the inference that the amount in controversy here exceeds $75,000.

*Hill v. Toys "R" Us, Inc.*, Civil Action No. 10-0404-WS-B, 2010 WL 3834532, at *2 (S.D. Ala. Sept. 24, 2010); *accord Vail v. Smarterfuel South, LLC*, Civil Action No. 13-00277-KD-N, 2013 WL 5373525, at *10 (S.D. Ala. Sept. 25, 2013) ("Given the lack of a factual record

---

[5]     The Defendants state that the eight similar cases they reference "involved damages well in excess of the $75,000 jurisdictional minimum" and, therefore, "[i]t is reasonable to extrapolate therefrom that the estimated amount at issue in this case will far exceed the jurisdictional amount, too." (Doc. 1 at 11.) The undersigned disagrees. In the cases cited by the Defendants, six plaintiffs received jury awards of more than $225,000, (*id.* at 8-10), which the undersigned would consider "well in excess of the $75,000 jurisdictional minimum," (*id.* at 11), but five of the plaintiffs received jury awards ranging from $56,000 to $96,000, (*id.* at 8-10). The $56,808 verdict was awarded to a woman who "sustained neck and back shoulder injuries requiring surgery." (*Id.* at 8.) The Defendants have presented no facts about the instant case to demonstrate that the Plaintiff's injuries are more severe than the woman who received the $56,808 jury award. Thus, the undersigned cannot extrapolate that the value of this case will exceed the jurisdictional minimum.

before the Court, the undersigned cannot find that the above cases are sufficiently similar to show by a preponderance of the evidence that the claims of one of the plaintiffs . . . are more likely than not above the jurisdictional requirement.  To make such a finding, the Court would have to rely on sheer speculation."); *Lambeth v. Peterbilt Motors Co.*, Civil Action No. 12-0169-WS-N, 2012 WL 1712692, at *5 (S.D. Ala. May 15, 2012) ("[D]efendants point to jury verdicts in other cases and insist that a review of Alabama trial court verdicts showcases that the amount in controversy in this case is greater than $75,000. . . . It does nothing of the sort.  Without knowing what [plaintiff's] injuries are, it is nothing short of folly to liken his claims to those of another plaintiff in another case.  There is no reasonable, principled basis for drawing an apples-to-apples comparison between [the plaintiff in this case] and any plaintiff in any of the other cases described by defendants.  Without knowing the nature and severity of his injuries, any attempt to formulate an analogy between [this plaintiff] and an injured plaintiff in another case who received damages greater than $75,000 is nothing more than gross speculation, guesswork and wishful thinking, none of which the Court can indulge." (footnote, citation and internal quotation marks omitted)).

The Defendants have provided the Court with no information regarding the Plaintiff's injuries beyond the nonspecific allegations in the Complaint, (*see* doc. 1-2, ¶ 9 ("[H]e was bruised and contused, he has been made sick, sore, lame and disabled; he suffered injuries to his cervical spine and neck. . . . [H]e has been caused to incur hospital, doctor, medical and drug bills in and about the treatment of his injuries; he has suffered great physical pain and mental anguish and will be caused to suffer great physical pain and mental anguish in the future.  He has been permanently injured.")). Because the allegations of injury do not provide sufficient detail regarding the nature and extent of the Plaintiff's injuries, the undersigned finds that the Defendants have not

established by a preponderance of the evidence that the amount in controversy exceeds $75,000.00.  *See Williams*, 269 F.3d at 1318, 1320 (finding that it was not facially apparent from the complaint that the amount in controversy exceeded $75,000 even though the plaintiff alleged that she suffered "permanent physical and mental injuries, . . . incurred substantial medical expenses, suffered lost wages, [] experienced a diminished earning capacity . . . [and] will continue to experience each of [her] losses for an indefinite time into the future"); *Lambeth*, 2012 WL 1712692, at *3 ("While the back injury is characterized as 'serious,' nothing in the Complaint elaborates on the nature or severity of that injury, or otherwise lends substance or meaning to it.  We simply do not know— or have any basis for inferring from the pleadings—anything about how severe, permanent, debilitating or painful the injury might be; how extensive, costly, or traumatic the course of treatment was, is or might be; or whether and to what extent the injury did, does or will constrain [the plaintiff's] work or life activities."); *Hill*, 2010 WL 3834532, at *1 (remanding case to state court for failure to prove the amount in controversy where the plaintiff alleged that she suffered back, neck, arm and head injuries; that she has experienced and continues to experience pain and suffering, emotional distress, and mental anguish; and that she has incurred ongoing medical expenses).

***Fraudulent Joinder***

As previously indicated, the diversity statute, 28 U.S.C. § 1332, demands complete diversity, such that plaintiffs may not be citizens of the same state as any defendant.  *See, e.g., Florence v. Crescent Resources, LLC,* 484 F.3d 1293, 1297 (11th Cir. 2007) (recognizing "necessary corollary" of diversity jurisdiction that "complete diversity of citizenship" is required); *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir.

2005) ("28 U.S.C. § 1332 requires 'complete diversity'—the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287.  Notwithstanding the complete diversity requirement, a non-diverse defendant who is fraudulently joined does not destroy jurisdiction because her citizenship is excluded from the diversity equation.  A finding of fraudulent joinder is appropriate in circumstances presented here only if the Defendants meet their burden of "showing by clear and convincing evidence" that "there is *no possibility* the [P]laintiff can establish a cause of action against the resident [D]efendant."  *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (citation and internal quotation marks omitted) (emphasis added); *see also Florence*, 484 F.3d at 1299 ("[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary."); *Triggs*, 154 F.3d at 1287 ("If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." (citation and internal quotation marks omitted)); *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("The burden of the removing party is a heavy one." (citation and internal quotation marks omitted)).  Thus, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate."  *Triggs*, 154 F.3d at 1287; *see also Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("Where a plaintiff states even a colorable claim against the

resident defendant, joinder is proper and the case should be remanded to state court." (citation omitted)).

Furthermore, "[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. . . . In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380 (citations omitted); *see also Crowe*, 113 F.3d at 1538 ("To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. . . . The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties."); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) ("In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts.").

> While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b), the jurisdictional inquiry must not subsume substantive determination. Over and over again, we stress that the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.

*Crowe*, 113 F.3d at 1538 (internal citations and quotation marks omitted). "In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" *Pacheco de Perez*, 139 F.3d at 1380-1381 (quoting *Crowe*, 113 F.3d at 1538).

> In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law *might* impose liability on the facts involved.  Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

> In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims.  Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

*Crowe*, 113 F.3d at 1541-1542 (internal citations and quotation marks omitted).

Here, the Defendants argue that Sabrina Williams, the manager of the McIntosh store, was fraudulently joined "because there is no possibility that Plaintiff can prove a cause of action against her."  (Doc. 18 at 3.)   The Plaintiff asserts negligence and wantonness claims against Ms. Williams for failing to secure a safe method of delivery of Dollar General merchandise to the McIntosh store.  (Doc. 1-2 at 10-13.)  The Plaintiff alleges that, due to the manner in which the McIntosh store is located along U.S. Highway 43 and the manner in which vehicles parked in the McIntosh store parking lot, delivery trucks delivering Dollar General merchandise to the McIntosh store were "required to back the truck and trailer rigs . . . across U.S. Highway 43 to deliver [the] merchandise."  (*Id.* at 10.)  The Plaintiff alleges that Ms. Williams, as manager of the McIntosh store,

> knew or should have known that this activity was dangerous to the motoring public traveling upon U.S. Highway 43 . . . and had been warned by the McIntosh Police Department . . . that such activity was dangerous and that [she] should call the . . . Police Department when a

> load of merchandise was scheduled to arrive so that the [police] could provide traffic control for the delivery of merchandise being delivered in this manner.  It was foreseeable to [Ms. Williams] that the failure to notify the McIntosh Police Department of the scheduled delivery . . . and/or fail[ure] to secure an alternative method for the delivery of Dollar General merchandise that would not require backing across U.S. Highway 43 in such a manner, including clearing the [store] parking lot to accommodate the arrival of the [delivery truck], would create an unreasonable incident of danger to the motoring public including the Plaintiff . . . .

(*Id.* at 10-11.)  The Plaintiff alleges that Ms. Williams owed a duty to the motoring public to either (1) notify the police in advance of the delivery so that the police could ensure that the delivery was made in a safe manner; or (2) "secure an alternative method of delivery," such as "clearing the [McIntosh store] parking lot to accommodate the arrival of the [delivery truck]."  (*Id.* at 11-12.)  The Plaintiff further alleges that Ms. Williams breached her duty by negligently and/or wantonly failing to notify the police or secure an alternative method of delivery, and that, as a result of her negligence and/or wantonness, the Plaintiff was injured.  (*Id.* at 12-13.)

To support his claim against Ms. Williams, the Plaintiff has attached to his motion to remand the affidavit of Walter Conner, the sergeant with the McIntosh Police Department who advised Ms. Williams prior to the automobile accident at issue in this case that the delivery method at the McIntosh store was unsafe.  (Doc. 14-2.)  Sergeant Conner stated that

> [o]n several occasions, [he has] witnessed Dollar General's delivery trucks pulling across Highway 43 in McIntosh, Alabama[,] and then backing across the southbound lane of Highway 43 to enter the Dollar General McIntosh, Alabama[,] store.  This activity was dangerous because it blocks the highway and was being done without any traffic control.

(*Id.* at 2.)  Sergeant Conner further stated that,

> several months prior to [the incident at issue in this case], . . . [he] went to the [McIntosh store] and talked with [Ms.] Williams . . . about how dangerous this activity was.  [He] informed [her] that the Dollar General delivery trucks were creating a dangerous situation for the traffic on Highway 43 by engaging in this type of conduct and that someone was

going to be injured if the activity was not stopped or modified.   Ms. Williams advised [Sergeant Conner] that she agreed that the activity was dangerous but that there was no other way for the trucks to get into the store except to back in which would require them to pull across Highway 43 and then back in like they were doing.   [Sergeant Conner] advised Ms. Williams that if that were the case, Dollar General should call [the McIntosh Police Department] when delivery trucks were scheduled to arrive and that [the police] would provide traffic control so that no one would get hurt when the Dollar General trucks were going to be delivering the merchandise in this manner.   Ms. Williams acknowledged that she received notice of when the delivery trucks were to arrive and that it would be safer to call [the police] and get [the police] to provide traffic control and that calling and getting traffic control needed to be done.   She advised [Sergeant Conner] that she would pass the information on to her supervisor and advise him that Dollar General should call [the police] for traffic control when the deliveries were to be made.

To [Sergeant Conner's] knowledge, no one from Dollar General, including [Ms.] Williams, ever called [the McIntosh Police Department] for traffic control for a delivery truck.   Additionally, [the McIntosh Police Department] never received a call from any delivery truck operator or anyone from any company owning the delivery trucks or trailers for traffic control for deliveries being made to the [McIntosh store].   [Ms.] Williams, nor anyone else with Dollar General, or any of the delivery trucks that served the [McIntosh store], ever [sic] called the McIntosh Police Department for traffic control for delivery of merchandise to the [McIntosh store] before the incident [at issue in this case].

(*Id.* at 2-3.)

The Defendants argue that there is no possibility that the Plaintiff can prove a cause of action against Ms. Williams because, they assert, she did not owe the Plaintiff a duty of care.   (Doc. 18 at 3-5.)   However, they provide no legal authority in support of this argument.   (*Id.*)[6]   The Defendants primarily rely on Ms. Williams' affidavit, in which she states that she "do[es] not supervise and do[es] not have control over Werner [Enterprises] drivers, including Ralph Vazquez"; that she "do[es] not have the ability to

---

[6]      The Defendants cite to *Berkel & Co. Contractors, Inc. v. Providence Hosp.*, 454 So. 2d 496, 506 (Ala. 1984), for the general proposition that "[t]he existence of a duty is a question of law to be decided by the court."   (Doc. 18 at 4 (citing *Berkel*, 454 So. 2d at 506).)   However, they cite to no legal authority supporting their argument that a duty cannot be found in this case. (*See id.*)

tell Ralph Vazquez or other Werner [Enterprises] drivers how or where to drive [their] trucks"; that she "do[es] not watch as the trucks approach the McIntosh store[] to make deliveries"; that "[t]he police have not told [her] that the way Ralph Vazquez or Werner [Enterprises] drivers operate their delivery trucks when making deliveries to the McIntosh store is dangerous or inappropriate"; that "[t]he police have not told [her] to call them before a delivery truck makes a delivery"; and that "even if the police wanted to be notified, [she] could not give them notice of when a delivery truck would arrive" because "deliveries that are scheduled for a specific day are not scheduled for a specific time." (Doc. 1-4, ¶¶ 5-10.) Based on the assertions in Ms. Williams' affidavit, the Defendants contend that the Plaintiff cannot establish that Ms. Williams owed the Plaintiff a duty of care in this case. (Doc. 18 at 4-5.)

However, the court "must evaluate the factual allegations in the light most favorable to the [P]laintiff." *Pacheco de Perez*, 139 F.3d at 1380 (citations omitted). Thus, for purposes of determining the fraudulent joinder issue presented in this case, the undersigned resolves the questions of fact, disputed in the affidavits presented by the parties, in favor of the Plaintiff. *See Legg*, 428 F.3d at 1322-23. As such, the undersigned must determine whether the Defendants have shown, by clear and convincing evidence, that there is no possibility that Ms. Williams owed the Plaintiff, as a motorist on U.S. Highway 43, a duty of care where she knew that the method by which delivery trucks were delivering Dollar General merchandise to her store was unsafe for the motorists on U.S. Highway 43; she received notice of when delivery trucks would be making their deliveries; and she agreed that Dollar General should call the police to provide traffic control during deliveries to ensure the safety of motorists on U.S. Highway 43.

As stated above, the Defendants provide no legal authority supporting their position that a duty could not arise under these circumstances. (*See* doc. 18 at 3-5.) The

Plaintiff argues that he could establish a duty based on the analysis of the Alabama Supreme Court in *Taylor v. Smith*, 892 So. 2d 887, 891 (Ala. 2004), (doc. 14-1 at 7-8), a case in which the court discussed the duty analysis generally and, more specifically, considered whether a duty of care was owed to foreseeable third party motorists. *See Taylor*, 892 So. 2d at 891-97.  In *Taylor*, the court explained that "the existence of a duty is determined by a number of factors, including '(1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened.'" *Id.* at 892 (quoting *Morgan v. South Cent. Bell Tel. Co.*, 466 So. 2d 107, 114 (Ala. 1985)). The court emphasized that "'[t]he *key* factor is whether the injury was *foreseeable* by the defendant.'"  *Id.* (quoting *Key v. Compass Bank, Inc.*, 826 So. 2d 159, 170 (Ala. Civ. App. 2001)) (emphasis in *Taylor*).  The court also stated "the well-established rule that every person owes every other person a duty imposed by law to be careful not to hurt him," *id.* at 893 (citation and internal quotation marks omitted), and confirmed that, "[i]n a variety of circumstances, [the Alabama Supreme Court] has recognized a duty to foreseeable third parties, based on a general obligation imposed in tort to act reasonably," *id.* (citations and internal quotation marks omitted).

In *Taylor*, an injured motorist plaintiff brought a negligence action against a physician, who administered methadone and served as the director of a methadone treatment center, after one of the physician's patients, who was under the influence of methadone following one of her treatments, "lost control of her automobile and collided with the automobile occupied by [the plaintiff]." *Id.* at 889-90.  The plaintiff alleged that the physician "owed a duty to [the plaintiff], who was driving on a public roadway, not to discharge [his patient], who was impaired and could not operate a motor vehicle in a responsible and safe manner." *Id.* at 891.  The trial court granted summary judgment in favor of the physician after concluding that he did not owe the plaintiff a legal duty. *Id.*

16

The Alabama Supreme Court reversed.  *Id.* at 897.  The specific question considered by the supreme court was "whether the director of a methadone-treatment center owes a duty of due care to a nonpatient motorist who is injured in an automobile accident with the director's patient, when it is reasonably foreseeable that such an accident may result from the director's failure to exercise due care in administering methadone to the patient."  *Id.* at 892.    After considering the factors identified above,[7] the court determined that the physician / director owed a duty of care to the plaintiff.  *Id.* at 897.

In *Kelly v. M. Trigg Enterprises, Inc.*, 605 So. 2d 1185 (Ala. 1992), another instructive case, the Alabama Supreme Court concluded that a retail store owed a duty of care to motorists who were injured in a collision with a car driven by a minor who had intentionally inhaled the chemical contents of a product purchased at the store. *Kelly*, 605 So. 2d at 1190.  The product at issue in that case was an air freshener composed of ethyl chloride, a chemical that causes dizziness and anesthetic effects, among other things, when inhaled.  *Id.* at 1189.  The injured motorists asserted negligence and wantonness claims against the store for distributing the air freshener. *Id.* at 1187.  They alleged that the air freshener was an unreasonably dangerous product and that the retailer should have known that it was likely to be used as an inhalant.  *Id.* The trial court entered summary judgment in favor of the retailer after concluding that it was not reasonably foreseeable that the air freshener would be used as an inhalant. *Id.* at 1189.  On appeal, the supreme court reversed.  *Id.* at 1190-91.  The supreme court stated that "'[t]he ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised.'"  *Id.* at 1190 (quoting *Buchanan v. Merger Enter., Inc.*, 463 So. 2d 121, 125-26 (Ala. 1984)).  The court added that

---

[7]      The court also discussed statutes pertaining to the medical practice, as well as the policy implications of its decision.  *Taylor*, 892 So. 2d at 892-97.

"'a finding of legal duty in [Alabama] continues to be a function of the foreseeability of the danger, tempered by a consideration of the feasibility of an alternative design.'" *Id.* (quoting *Bean v. BIC Corp.*, 597 So. 2d 1350, 1352 (Ala. 1992).  Because the plaintiffs had presented evidence that it was foreseeable to the retail store that the air freshener product would be used as an inhalant, the supreme court concluded that the retail store owed a duty to the plaintiffs who were injured in an automobile accident as a result of the inhalation of the product.  *Id.* at 1190.

Based on the legal authority discussed above, and "resolv[ing] any uncertainties about the applicable law in the [P]laintiff's favor," *Pacheco de Perez*, 139 F.3d at 1380, the undersigned concludes that there is a *possibility* that an Alabama court could find that Ms. Williams owed the Plaintiff a duty of care in this case.  Considering the facts of the instant case in the light most favorable to the Plaintiff, the most important factor—foreseeability—weighs heavily in favor of finding a duty because Sergeant Conner stated that Ms. Williams knew that the method by which Dollar General merchandise was delivered to the McIntosh store was unsafe for motorists on U.S. Highway 43, (doc. 14-2 at 2).  A finding of a duty is further supported by the type of harm threatened in this case because the method of delivery of goods to the McIntosh store "involve[d] a high potential for severe personal injury, death, and property damage." *Taylor*, 892 So. 2d at 897.  The other factors—the nature of the defendant's activity and the relationship between the parties—do not as clearly weigh in favor of finding a duty.  Ms. Williams' activity in this case involved her managing of the store and, as Plaintiff alleges, her failure to allow for a safe method of delivery of store merchandise.  However, discovery has not commenced, and the parties have not established the nature of Ms. Williams'

managerial activities.[8]  Without a clearer picture of Ms. Williams' managerial activities it is difficult to assess whether her activity weighs in favor of finding a duty. Nevertheless, it is possible that an Alabama court could find that her conduct weighs in favor of a duty, particularly if it finds that she was involved with ordering and/or receiving merchandise as well as maintaining a safe entryway to the store lot.  Lastly, the relationship between Ms. Williams, the manager of the McIntosh store, and the Plaintiff, a motorist passing by the store, does not appear particularly strong.  However, such a relationship, on its own, will not foreclose the finding of a duty.  *See Kelly*, 605 So. 2d at 1190 (finding that a retailer owed a duty of care to motorists passing by the store when the motorists were injured in an automobile accident caused by a dangerous product sold by the retailer).[9]  Although an Alabama court could conclude, ultimately,

---

[8]       Notably, Ms. Williams' affidavit does not contain an explanation of her managerial activities and responsibilities.  (*See* doc. 1-4.)  Rather, she simply states that her responsibilities do not include the supervising or controlling of the delivery truck drivers, who are employed by Werner Enterprises.  (Doc. 1-4, ¶¶ 4-6.)  The Defendants argue that those facts demonstrate that Ms. Williams did not owe a duty of care to the Plaintiff in this case.  (Doc. 18 at 4.)  The Defendants are mistaken.  The fact that Ms. Williams did not supervise or control the truck drivers does not refute the Plaintiff's allegations that Ms. Williams had a duty to secure a safe method of delivery to her store by notifying the police of the scheduled delivery or otherwise allowing for a safe delivery by maintaining the parking lot in such a fashion as to accommodate the arrival of the trucks to the store lot in a safe manner, (doc. 1-2 at 11-12).  Of course, Ms. Williams also states in her affidavit that the police never informed her that the method of delivering merchandise to her store was unsafe, that the police never told her to call them in advance of scheduled deliveries, and that she would not be able to notify the police of scheduled deliveries because she does not know when the delivery trucks will arrive at her store.  (Doc. 1-4, ¶¶ 8-10.)  However, those statements are disputed by the affidavit of Sergeant Conner, (doc. 14-2), and the undersigned construes the facts in favor of the Plaintiff.

[9]       The undersigned acknowledges that *Kelly* involved a retail store defendant, not a store manager.  *See Kelly*, 605 So. 2d at 1190.  To the extent that the Defendants argue that an Alabama court could not find that a store manager might share in the duty of care owed by her store, the undersigned disagrees.  *See Waters v. Anthony*, 40 So. 2d 316, 319 (Ala. 1949) (finding that a manager of a movie theater owed a duty of care to patrons of the theater); *Boyd v. Wal-Mart Stores, Inc.*, 710 So. 2d 1258, 1260 (Ala. Civ. App. 1997) (reversing the entry of summary judgment in favor of store managers on premises liability claim because the court could not

that Ms. Williams did not owe the Plaintiff a duty of care in this case, at this stage in the proceedings, the Defendants have not demonstrated by clear and convincing evidence that there is no possibility that an Alabama court could find such a duty.

Finally, the Defendants argue that the Plaintiff cannot establish a cause of action against Ms. Williams for Dollar General's alleged wrongful conduct because, the Defendants contend, she "did not personally participate or contribute to Plaintiff's accident and resulting injuries."  (Doc. 18 at 5-6.)  In support of this argument, the Defendants cite only to *Sieber v. Campbell*, 810 So. 2d 641, 645 (Ala. 2001), and *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986), two cases in which the Alabama Supreme Court stated the general rule that "employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity."  (Doc. 18 at 5 (citing *Sieber*, 810 So. 2d at 645; *Ex parte Charles Bell*, 496 So. 2d at 775).)[10]

For Ms. Williams to have participated in the wrongful act at issue in this case, "'there must have been upon [her] part such a breach of duty as contributed to, or helped bring about, the injury.'"  *Atwood v. Weyerhaeuser USA, Inc.*, Civil Action No. 09-0379-CG-N, 2010 WL 749337, at *3, 9 (S.D. Ala. Feb. 26, 2010) (quoting *Crigler v. Salac*, 438 So. 2d 1375, 1380 (Ala. 1983)).  However,

---

conclude, "as a matter of law, . . . that . . . [the store managers] were not negligent"); *see also Kimbrough v. Dial*, Civil Action No. 06-0585-WS-C, 2006 WL 3627102, at *3-4 (S.D. Ala. Dec. 11, 2006) (discussing *Waters* and *Boyd*, and concluding, for purposes of a motion to remand, that the plaintiff had sufficiently alleged a duty of care to support her negligence and wantonness claims against a store manager).

[10]     Neither *Sieber* nor *Ex parte Charles Bell* advances the Defendants' argument. *Sieber* involved questions of personal jurisdiction and facts entirely different from this case.  *See* 810 So. 2d at 645.  In *Ex parte Charles Bell*, the Alabama Supreme Court concluded that the agent of the corporation was properly named in a fraud action for venue purposes because the Plaintiff alleged that the agent personally participated in the fraud.  *See* 496 So. 2d at 775.

> this [C]ourt does not need to reach a definite pronouncement of how much participation is necessary for [Ms. Williams] to be found liable under Alabama law, because in reviewing a motion to remand in light of a fraudulent joinder claim, the precise contours of the amount of participation . . . is not relevant.  The Eleventh Circuit has made it clear that this [C]ourt may only deny a motion to remand if the defendants have proven by clear and convincing evidence that there is "*no possibility*" that the plaintiff[] "can establish a cause of action against the [] resident defendant[] . . . [.]

*Id.* at *4 (citing *Henderson*, 454 F.3d at 1283) (footnote omitted).

Based on the allegations in the Complaint and the affidavits presented by the parties, the undersigned finds for purposes of the Plaintiff's motion to remand that an Alabama court might find that Ms. Williams participated in the tort alleged in this case. *See Kimbrough*, 2006 WL 3627102, at *5 (rejecting the defendants' argument that a store manager was fraudulently joined because she did not personally contribute to the tort where the plaintiff alleged that the store manager "personally failed to maintain the store in a reasonably safe condition, . . . personally failed to warn [the plaintiff] of the unreasonably dangerous condition, and . . . personally caused or allowed the unreasonably dangerous condition to exist").  As discussed above, the Plaintiff alleges that Ms. Williams negligently failed to secure a safe method of delivery of merchandise to the McIntosh store and that, as a result of her negligence, the Plaintiff was injured when his vehicle collided with the truck delivering merchandise to the McIntosh store. (Doc. 1-2 at 10-13.)  Furthermore, the Plaintiff has made a showing that Ms. Williams knew that the method of delivery was unsafe, that she received notice of when delivery trucks were scheduled to arrive, and that she agreed that the police should be notified of deliveries in order to provide traffic control and ensure safety on the roadway during deliveries.   (Doc. 14-2 at 2-3.)   The Defendants argue that Ms. Williams did not participate in the tort in this case because she was not responsible for supervising the delivery truck drivers and did not have the ability to control them.  (Doc. 18 at 6.)  As

discussed above, *see supra* note 8, such arguments are unavailing. Under the circumstances of this case, as alleged by the Plaintiff, Ms. Williams did not need to supervise or control the truck drivers to fulfill her duty of care to the motorists passing by her store.

### Conclusion

Keeping in mind the narrow construction afforded the removal statute, the undersigned has concluded that the Defendants have failed to meet their burden of establishing the jurisdiction of this Court. Specifically, the undersigned finds (1) that the Defendants failed to establish that the amount in controversy in this case exceeds $75,000.00, and (2) that the Defendants failed to establish that the resident Defendant, Sabrina Williams, was fraudulently joined. Accordingly, after careful consideration of the pleadings and the parties' briefing, and for the reasons set forth above, it is hereby **RECOMMENDED** that the Plaintiff's Motion to Remand (doc. 14) be **GRANTED** and that this matter be **REMANDED** to the Circuit Court of Washington County, Alabama.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and

recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 2nd day of February 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**